ACCEPTED
01-17-00677-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/19/2018 11:53 PM
CHRISTOPHER PRINE
CLERK

**Case No. 01-17-00677-CV**

IN THE DISTRICT COURT OF HARRIS COUNTY, TEXAS
FIRST COURT OF APPEALS, HOUSTON TEXAS
JUDICIAL DISTRICT

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/19/2018 11:53:30 PM

CHRISTOPHER A. PRINE
Clerk

Monica Hardaway and Glenn Hardaway,

*Appellants*

Vs

Deutsche Bank National Trust Company as Trustee in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1 Asset-Backed Certificates Series 2006-WL1, and Select Portfolio Servicing, Inc.

*Appellee.*

From the Court at Law No. 4 in Fort Bend County

Case 17-CCV-059731

APPELLANTS' BRIEF

APPELLANTS' REQUEST FOR ACCELERATION OF BRIEF

AND FOR ORAL ARGUMENT

Monica and Glenn Hardaway, Pro Se
1303 Azalea Bend,
Sugar Land TX 77479
Telephone: (832) 708-5321

0

# IDENTITY OF PARTIES AND COUNSEL

| APPELLANTS/ | COUNSEL: Pro Se |
|---|---|
| Monica Hardaway<br>Glenn Hardaway | Monica and Glenn Hardaway<br>1303 Azalea Bend,<br>Sugar Land TX 77479 |

| APPELLEE | COUNSELS: |
|---|---|
| Deutsche Bank National Trust Company as Trustee, In Trust for Registered Holder of Long Beach Mortgage Loan Trust 2006-WL1, Asset-Backed Certificates Series 2006 WL1 | Christopher Ferguson<br>Codilis & Stawiarski, P.C.<br>650 N. Sam Houston Parkway East<br>Suite 450<br>Houston, TX 77060 |
| Select Portfolio Servicing, Inc.<br>3217 S. Decker Lake Dr.<br>Salt Lake City, UT84119 | William Denzel Kee III<br>19855 Southwest Freeway, Ste 330<br>Sugar Land TX 77479 |

## IDENTITY OF PARTIES

1. Monica Hardaway and Glenn Hardaway (hereinafter Plaintiffs or The Hardaways) are residents of Fort Bend County and at all times relevant to this Petition have owned the Subject Property for 13 years and continue to live in the Subject Property now and at all times relevant to this Petition. The Subject Property is located at 1303 Azalea Bend, Sugar Land, Texas 77479. The Subject Property legal description is:

> LOT ONE (1), IN BLOCK (1), OF THE FINAL PLAT OF GREATWOOD FOREST, SECTION THREE (3), AN ADDITION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 1308/B AND 1309/A, OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS

**The Hardaways request to the Court to take judicial notice of the following about This Defendant**

2. Defendant, Deutsche Bank National Trust Company as Trustee in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1 Asset-Backed Certificates, Series 2006-WL1, (hereinafter "Defendants" or "DBNTC-LBM2006WL1") does not have a registered office nor a registered agent. The Hardaways have diligently searched for an address for Defendants and cannot find one. There is no record of Defendants' business because this entity does not exist. Further research shows that Deutsche Bank National Trust Company as Trustee in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1 Asset-Backed Certificates, Series 2006-WL1 was terminated with certification 15(d) Commission No. 333-109318-12 filed on December 29, 2006. The last report on this entity was filed in February 2007 with no reported asset-backed certificates. See www.sec.gov. According to the Treasury Department their prime bank instruments CUSIPS no longer exist and they are not offering asset-backed mortgages. CUSIPS records are found here: www.treasurydirect.gov (Class M-8 CUSIP 542514RB8); (Class M-9 CUSIP 542514RE6); (Class M-10 CUSIP 542514RF3); (Class M-11 CUSIP 542514RG1) and before the IRS as Real estate mortgage investment conduits (REMICs) and collateralized debt obligations (CDOs). Defendants have not reported any asset-backed mortgages since 2007. See www.irs.gov/pub/irs-prior/p938--

2007.pdf page 85. The Trust, Deutsche Bank National Trust Company as Trustee in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1 Asset-Backed Certificates, Series 2006-WL1, was voluntarily dissolved. Therefore, Deutsche Bank National Trust cannot act at the Trustee for this Trust and Select Portfolio Servicing, Inc. cannot be a mortgage servicer of a Defunct Trust or a Bank that is no longer a Trustee, because the Trust is defunct.

**The Hardaways request to the Court to take judicial notice of the following facts about the apparent servicer Select Portfolio Servicing, Inc.:**

On September 4, 2007 Case No. 03-12219-DPW, UNITED STATES OF AMERICA v. SELECT PORTFOLIO SERVTCING, INC. "(formerly Fairbanks Capital Corp.),a Utah corporation, in a FINAL JUDGMENT AND ORDER: that Defendants, and each of them, their officers, employees, agents, representatives, and all other persons or entities in active concert or participation with them who receive actual notice of this Modified Order by personal service or otherwise, directly or through any corporation, subsidiary, division, or other device, are hereby permanently restrained and enjoined, in connection with the servicing of any loan, from": "Permanently restrained and enjoined, in connection with the servicing of any loan that was in default at the time it was obtained by Defendants, from: A.
Using any false, deceptive, or misleading representation or means in connection with the collection of any debt, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including but not limited to: (1) falsely representing the character, amount, or legal status of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, in violation of Sections 807(2)(A) and (B) of the FDCPA,15 U.S.C. § I 692e(2)(A) and (B); (2) 2)…shall also include any related loan servicing activity such as the administration of loan accounts, the collection of loan payments, the foreclosure of real property,…

## REQUEST FOR ORAL ARGUMENT

This case presents a different issue on the handling of an eviction case under Texas law and issues regarding the need to satisfy "due process" requirements. Oral argument is requested to present causes of action against Appellee and others. Appellants are requesting to reverse Appellee's affirmative judgment of possession and void the writ of possession that is pending, on the basis that the County Court No. 4 had knowledge of a <u>fraudulent deed conveyance</u>. The Hardaways personally informed the judge on two occasions that Appellee's had no legal standing or interest in the Subject Property, along with the fact that a proper and legal Deed was not in their possession and they had no Note with which to claim an acceleration. There was no default on any loan and no legitimate lender or beneficiary existed with which to execute a "Power of Sale". Consequently, Appellants were never tenants and are not tenants at sufferance. Therefore, the issuance of a writ of possession is unlawful. All actions described above made the non-judicial foreclosure void, the Promissory Note is now Null and the Deed of Trust unenforceable. All these cumulative actions by Appellee have caused irreparable harm to Appellants. Appellee's actions continue to cause injury and harm to Appellants as they continue to pursue multiple writs of possession, despite the fact this such actions are unlawful. Appellants have successfully obtained a Temporary Restraining Order from the Fort Bend District preventing the execution of Appellee's latest unlawful writ of possession issued on March 6, 2018.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL....................................................................1

    IDENTITY OF PARTIES ...................................................................................... 2

REQUEST FOR ORAL ARGUMENT...................................................................4

STATEMENT OF JURISDICTION .......................................................................7

STATEMENT  OF  THE  CASE ...........................................................................8

STATEMENT OF THE ISSUES ............................................................................9

    Issue One: Court at Law No. 4 Fort Bend County, Texas did not have Jurisdiction ...................... 9

    Issue Two:  The Hardaways have been deprived of their Right to Due Process .......................... 10

    Issue Three:  The Hardaways are not Tenants at Sufferance ........................................................ 10

    Issue Four: Writ of Possession lack of legal standing................................................................... 11

    Issue Five: Affidavit of Indigency which included the bond ........................................................ 12

STATEMENT OF FACTS........................................................................................13

SUMMARY OF ARGUMENT AND AUTHORITY .................................................16

ARGUMENT ...........................................................................................................19

    Standard of Review .................................................................................................................... 19

    State of the Evidences ................................................................................................................. 19

CONCLUSION .......................................................................................................20

PRAYER FOR RELIEF...........................................................................................21

CERTIFICATE OF SERVICE..................................................................................22

APPENDIX ..............................................................................................................22

# INDEX OF AUTHORITIES

## Cases

*ICC v. Louisville & N. R. Co.*, 227 U.S. 88, 93-94 (1913_____16

*Durkay v. Madco Oil Co.*, (Tex. App. – Corpus Christi 1993, writ denied)_____17

*Goldberg vs. Kelly,* 397 U.S. 254, 90 S.Ct. 1001, 25 L.Ed.2d 287 (1970_____16

*Greene v. McElroy*, 360 U.S. (1959) _____16

*Latimer v. Smithkline & French Lab.*, (5th Cir. 1990). _____10

*Little v. Liquid Air Corp.*, (5th Cir. 1994) _____10

*Mills v. Haggard*, (Tex. App. – Waco 2001, no writ) _____17

*Mitchell v. Armstrong*, (Tex. App. -- Houston [1st Dist.] 1995, writ denied) _____9

*Nixon v. Mr. Property Management Co., Inc*_____18

*Rayos v. Chrysler Credit Corp.*, (Tex.App.--E1 Paso 1985, no writ)._____18

*Rice v. Pinney, (Tex. App.—Dallas 2001, no pet.)*;_____15

Tex. Prop. Code § 51.002_____9

*Willner v. Committee on Character & Fitness*, 373 U.S. _____16

## Regulations

Tex. R. Civ P. §510.3(e) _____9

Tex. R. Civ. P. 746_____9

TEX.PROP.CODE § 24.004(a) _____9

TEX.PROP.CODE §12.0012 _____11

TEX.PROP.CODE ANN. § 24.002(a) _____15

Texas Property Code §24.001-.011. Rule 510.8(d)(1) _____17

Texas Rules of Civil Procedure §510.8(d)(1) and §510.8(d)(2) _____11

## FEDERAL ORDERS

FDCPA,15 U.S.C. § I 692e(2)(A) and (B); (2) 2)… _____3

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under the Government Code Title 2, Judicial Branch Subtitle" A". Chapter 22. Subchapter "C" Courts of Appeals. Section 22.201 (b), and Jurisdiction of this Court is invoked under Section 1291 Title 28, United States Code as an appeal from a final judgment from the County Court at law No. 4. Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE CASE

Appellees used a non-judicial process and made demands for an eviction against Appellants. However, the Fort Bend County Justice of the Peace Precinct 1, denied Appellee's (hereinafter Appellee or DBNBTC-LBMLT-2006WL1) and ruled in favor of The Hardaways with a judgment of possession of the Subject Property (Appendix # 4). Appellees then appealed to the County Court at Law No. 4 of Fort Bend County, Texas. There was no claim filed by Appellees. Instead, Appellees improperly filed a Motion for Final Summary Judgment. The Hardaways responded and also filed a Cross-Motion Objecting to and Denying each point of Appellee's Summary Judgment alleging "Appellees committed fraud, had no legal standing, had no interest in the property and alleged that Appellee's had a forged Substitute Trustee's Deed as their only evidence." After the hearing, The County Court at Law No. 4 entered a Summary Judgment in favor of Appellee. Consequentially, The Hardaways appealed to this Court.

# STATEMENT OF THE ISSUES

## Issue One: Court at Law No. 4 Fort Bend County, Texas did not have Jurisdiction

In the Tex. R. Civ. P. §510.3(e) the merits of the title shall not be adjudicated" in Justice Courts or County Courts, in the Tex. R. Civ. P. 746., notwithstanding this general rule, if the question of title is intertwined with the issue of possession, then possession may not be adjudicated without first determining title. In such a case involving a genuine issue of title, the Judge at County Court at Law No. 4 at Fort Bend County, TX knew that title was involved in this case according to TEX.PROP.CODE § 24.004(a) This court had a sworn statement alleging the suit is based on a deed executed in violation of the law ( DK 7-2017).    In addition, the County Court at Law No. 4 on appeal *de novo* had no jurisdiction. *Mitchell v. Armstrong*, 911 S.W.2d 169 (Tex. App. -- Houston [1st Dist.] 1995, writ denied)..    Tex. Prop. Code § 51.002. and §12.0012 . DBNBTC-LBMLT-2006WL1 did not comply with the above Sections of the Texas Property Code. Appellee failures prevented the probate court from acquiring jurisdiction over both the probate matter and the subject property and void the foreclosure sale and the Substitute Trustee's Deed.  The failure to comply with this Texas Property Code provision prevented the County Court at Law No. 4 from obtaining jurisdiction over the Hardaways or its property and deprived The Hardaways of their right to due process. DBNBTC-LBMLT-2006WL1/Appellee conspired among themselves, failed to comply, and failed to insist on compliance with the referenced Texas Property Code provisions governing sale of real property under a Deed of Trust which failure was the proximate cause of substantial damages to The Hardaways, deprived them of due process, and makes the purported non-judicial foreclosure sale void ab initio; nonetheless, DBNBTC-LBMLT-2006WL1 and its agents have compounded the harm and damage to The Hardaways by continuing its wrongful efforts to evict them from their property.

**<u>Issue Two:  The Hardaways have been deprived of their Right to Due Process</u>**

The trial County Court at Law No. 4 in Fort Bend County, Texas erred in its judgment. First of all (1) Appellants made 3 requests for a jury trial and paid the fees, but no jury trial was conducted since Appellees made a motion for Summary Judgment to avoid a jury trial.  (2) The court knew about the illicit conveyance of The Hardaways' Deed yet ignored the Hardaways' objections despite plenty of evidence refuting the Appellee's motion for final summary judgment, where the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  At the hearing, The Hardaways presented evidence from the United States Securities and Exchange Commission including officially sealed documents, and also from the actual Fort Bend County Texas Property Records. Appellee falsely claimed on record that all the Hardaway evidence was irrelevant and hearsay. In addition, the Judge unfairly sustained all Appellee objections and overruling all the Hardaways' objections showing a clear bias in favor of Appellees.  (3) During this Summary Judgement hearing of August 8, 2017, the Hardaways were instructed by the Judge to remain silent during the presentation by Appellee and that the Court would place on record that the Hardaways were objecting to everything. This instruction by the Judge showed a deficiency of due process for the Hardaways. The Trial Court erred in refusing to read or take into deliberation the Hardaway's motion for their defense. See (DK 07/20/2017)

**<u>Issue Three:  The Hardaways are not Tenants at Sufferance</u>**

This forcible detainer action by Appellees DID NOT originate with any Court.  Appellees used an unlawful and fraudulent conveyance of a Deed to begin a legal battle as the "new owners" of the Subject

Property. This brought fraud upon the Court. Neither the Fort Bend County Court at Law No. 4 nor the United States Bankruptcy Courts had jurisdiction in this Deed issue regarding the Subject Property. Appellees have never proven their legal claim to be able to foreclose on the Subject Property, and no evidence has been presented as proof in any court proceedings to date. Appellees have been confusing judges and manipulating the court system filing fraudulent documents violating Texas laws, and abusing the non-judicial foreclosure process. See TEX.PROP. CODE §12.0012. The Hardaways have been denied their right of legal due process and justice. Appellees' attorneys have been hiding behind the name of a Trust that is defunct during this entire fraudulent process being perpetuated in the Court system.

This Appeal Court should confirm that there has been absolutely no evidence from existing records showing an assignment on the Deed with the name of Deutsche Bank National Trust Company as Trustee, as Trustee of Long Beach Mortgage Trust 2006-WL1 (Appellee omitted the word LOAN between Mortgage and Trust). There is no evidence of a licit transfer of the promissory note to the Appellee. There is no evidence of a default on any loan made between Appellee and the Hardaways. There is no evidence of the Power of Attorney for assignment of a New Substitute Trustee as is clearly is stated in paragraph 23 of the Deed (Appendix # 2). There never existed a conveyance or Trustee Sale from Deutsche Bank National Trust Company as Trustee, as Trustee of Long Beach Mortgage Trust 2006-WL1 (they omitted the word LOAN between Mortgage and Trust), TO the Deutsche Bank National Trust Company as Trustee, In Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1, Asset-Backed Certificates, Series 2006-WL1.

There never existed the authorization or standing to execute the "Power of Sale', therefore the Hardaways never became tenants at sufferance.

**Issue Four: Writ of Possession lack of legal standing**

Texas Rules of Civil Procedure §510.8(d)(1) and §510.8(d)(2) provides that a writ of possession may not be legally issued and may not be executed after the 90th day after a judgment for possession is signed

"more than 60 days after a judgment for possession is signed" or, for good cause, not more than "90 days after a judgment for possession is signed." Here, the writ of possession was issued more than 90 days after judgment for possession was signed. As a result, the issued writ was void and the trial court erred when it ordered its enforcement. See also Section 24.0053, Texas Property Code. A writ of possession cannot be issued more than 60 days after a judgment for possession is signed, and a writ of possession cannot be executed after the 90th day after a judgment for possession is signed. See also Texas Rules of Civil Procedure Rule 510.8. There is no motion for new trial in an eviction proceeding

## Issue Five: Affidavit of Indigency which included the bond

The Hardaways filed the affidavit of indigency on August 20, 2017 with the petition for appeal. This also includes the bond. When there is a bond a writ of possession cannot be issued. Therefore, a writ of possession should not have been granted to Appellees.

# STATEMENT OF FACTS

The Case No. 17-CCV-059731 was appealed by the Appellants from a dispute over the attempt to take possession of The Hardaways' residential property located at 1303 Azalea Bend, Sugar Land, Texas 77479. The legal description is as follows:

> LOT ONE (1), IN BLOCK (1), OF THE FINAL PLAT OF GREATWOOD FOREST, SECTION THREE (3), AN ADDITION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 1308/B AND 1309/A, OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS (the "Property").

On August 04, 2005, The Hardaways made a first-lien Note to LONG BEACH MORTGAGE COMPANY, A CORPORATION, for the original principal amount of $300,000.00 (the "Note"). To secure payment of the Note, Appellants executed a first-lien Deed of Trust for the benefit of LONG BEACH MORTGAGE COMPANY, A CORPORATION (the "Deed of Trust") which describes the Property and shows MICHEAL L. RIDDLE as Substitute Trustee. (Appendix # 2)

On December 3, 2014 JP Morgan Chase Bank National Association filed Assignment of ownership on Deed. There are no other assignments of ownership or change of Trustees. (Appendix #1) and (Appendix # 3)

On or about January 3, 2017, Appellees, acting through a purported Substitute Trustee, purportedly conducted a non-judicial foreclosure sale of the Property, using a Substitute Trustee's Deed purported to convey the Property to Appellees. The sale was stopped at the auction and canceled.

On or about January 7, 2017, Appellees, purporting to be the legitimate successors as Deutsche Bank National Trust Company, as Trustee, In Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1, Asset-Backed Certificates, Series 2006-WL1, purported to conduct a non-judicial foreclosure sale of "the Property" through a Substitute Trustee. Appellees claim to have purchased the Property at the Trustee's sale, and Appellees claim to be the owners of "the Property" in defiance of The

**13**

Hardaway's rights to the Property.

On March 23, 2017, Appellees used the Substitute Trustee's Deed in claiming to be owners of "the Property" and filed a forcible detainer action. However, the Fort Bend County Justice of the Peace Court awarded "the Hardaways" possession of "the Property" in a final judgment. (Appendix #4)

On April 11, 2017 Appellees appealed this ruling to the Fort Bend County Court at Law No. 4, the "forcible detainer action".

On August 8, 2017, Appellees were granted their Motion for eviction with a Summary Judgment and granted a Writ of Possession. A bond was set at $39,500.00.

On August 11, 2017, Appellants filed a Motion for New Trial. This motion was denied on August 26, 2017.

On August 18, 2017, Glenn Hardaway filed Bankruptcy Chapter 7, to protect his home. The automatic stay was lifted on January 8, 2018 for lack of jurisdiction.

On August 25, 2017, the Appellants filed a Notice of appeal. This case began in the Court of Appeals.

On September 05, 2017, Appellees requested their first Writ of Possession. This writ was returned unserved on September 25, 2017.

On January 26, 2018, Appellants requested to this Court to stay any Writ of possession. This motion was denied on January 29, 2018.

On January 26, 2018, Appellees requested a second Writ of Possession. This second Writ of Possession was returned unserved on February 01, 2018.

On January 28, 2018, Monica Hardaway filed Bankruptcy Chapter 7 to protect her home. On February 20, 2018, the automatic stay was lifted for lack of jurisdiction.

On March 06, 2018, Appellees requested a third Writ of Possession.

This Writ is currently under a TEMPORARY RESTRAINING ORDER from the Fort Bend County District Court.

**14**

On March 19, 2018, The Hardaways filed suit against Appellees for Wrongful Foreclosure in District Court, 434TH Judicial District, Fort Bend County, Texas, Cause No. 18-DCV-249402.

# SUMMARY OF ARGUMENT AND AUTHORITY

1. The Fort Bend County Court at Law No. 4 did not have jurisdiction to award possession of "the Property" because of the pendency of this lawsuit. The Hardaways recognize that in a case of Forcible detainer it is a procedure to determine the right to immediate possession of real property if <u>there was no unlawful entry.</u> See *Rice v. Pinney, (Tex. App.—Dallas 2001, no pet.)*; see also TEX.PROP.CODE ANN. § 24.002(a) (West 2014, forcible detainer under Texas Property Code Sections 24.001 – 24.008, the only issue shall be the right to actual possession. The governing procedural rule provides that "the court must adjudicate the right to actual possession and not title." At this point, the Hardaways had a judgment of possession that made them the rightful parties to actual possession and not title. The Hardaways objected to the forged Substitute Trustee's Deed that Appellee had entered as evidence in the Fort Bend County Court at Law No. 4. The Hardaways never became tenants at sufferance as Appellees have attempted to claim. The Hardaways were the rightful owners in possession of "the Property" as evidenced by the judgment from the Fort Bend County Justice of the Peace Court. There was never any conveyance of the Deed by the Hardaways to the Appellees. Before the non-judicial foreclosure there was not one single document on the Deed filed at Fort Bend County Court that shows the Hardaways as being tenants as Appellees wrongfully claimed.

What is at issue in this case is the absence of authority of Deutsche Bank National Trust Company as Trustee of Long Beach Mortgage Trust 2006-WL1 to direct its Substitute Trustee to sell the Appellants' home at a **foreclosure** sale to Deutsche Bank National Trust Company as Trustee in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1, Asset-Backed Certificates Series 2006-WL1. That authority is the basis for the Appellee claiming it is entitled to **evict** the Hardaways' from their home. The Trial Court, even in a summary judgment proceeding, must require the Appellee to establish that it has lawfully acquired a greater right of possession in

**16**

order for the court to **evict** them from their home. Appellee made no such attempt in this case. Their only argument was that Deutsche Bank National Trust Company as Trustee of Long Beach Mortgage Trust 2006-WL1 gave rights to Deutsche Bank National Trust Company, as Trustee, in Trust for Registered Holders of Long Beach Mortgage Loan Trust 2006-WL1 Asset-Backed Certificates Series 2006-WL1 to sell the property to themselves. On that basis, they claimed the right to take possession of the Hardaways' home. There are key material facts to be established in this process. Appellees made no attempt to establish them and obtained a summary judgment anyway.

In *Goldberg vs. Kelly,* 397 U.S. 254, 90 S.Ct. 1001, 25 L.Ed.2d 287 "(1970 the US Supreme Court) emphasized the importance of these due process rights, even in **non-judicial** proceedings.

In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. See., *ICC v. Louisville & N. R. Co*., 227 U.S. 88, 93-94 (1913; *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 103-104 (1963). What we said in *Greene v. McElroy*, 360 U.S. 474, 496-497 (1959), is particularly pertinent here:

Certain principles have remained relatively immutable in our jurisprudence. One of these is that, where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment... This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, ... but also in all types of cases where administrative... actions were under scrutiny."

2. The issues of title and possession are intertwined in this case because of the allegations of this case. If the Hardaways prevail in this case, the title to the Property is established. The Hardaways had and will continue to have the right to possession of the property. See *Mills v. Haggard*, (Tex. App. – Waco 2001, no writ); *Durkay v. Madco Oil Co.*, (Tex. App. – Corpus Christi 1993, writ denied).

3. The law is clear regarding the Appellee's deadlines for issuance and execution of writs of possession. Texas Rule of Civil Procedure 510.8 requires that a writ of possession be issued within sixty (60) days of the judgment and be enforced within ninety (90) days. Here, the Hardaways are presenting facts to support their request in this matter.

4. As acknowledged by the Hardaways, this process is governed exclusively by the Texas Rules of Civil Procedure 510 and the Texas Property Code §24.001-.011. Rule 510.8(d)(1) provides that a writ of possession may not be legally issued "more than 60 days after a judgment for possession is signed" or, for good cause, not more than "90 days after a judgment for possession is signed."  In essence, Rule 510.8 provides an additional thirty (30) days during which a writ of possession may be issued if good cause is shown. However, that thirty-day extension for good cause also acts as a statute of repose. In other words, although a party may show good cause why a justice court should issue a writ of possession outside the 60-day limit after the judgment for possession is signed, in no event shall a justice court issue a writ of possession more than 90 days after a judgment for possession is signed.

5. Appellees made a second request for another Writ of Possession, clearly over 210 days from the signed judgment of August 8, 2017.  Appellees also failed to present facts to support their request for a second Writ of Possession. The Fort Bend County Court at Law No. 4 is obligated to request facts to support a new Writ of Possession, following a failed execution of the first Writ of Possession.  This court erred in issuing a second Writ of Possession.  Additionally, Appellees cannot dispute that this is an error that needs to be reverted, as stated above; the law is clear regarding the deadlines for issuance

**18**

and execution of writs of possession. Texas Rule of Civil Procedure 510.8 requires that a writ of possession be issued within sixty (60) days of the judgment and be enforced within ninety (90) days. Here, neither occurred. Appellants are presumed to be aware of such deadlines. Appellees also failed to present facts to support their new application for a writ of possession after the time limitation for the issuance of the March 02, 2018 writ of possession. **Therefore, the Fort Bend County Court at Law No. 4's judgment should be reversed and rendered void.**

# ARGUMENT

## Standard of Review

The Court, in *Wyatt vs. Furr's Supermarkets*, among numerous other cases, has briefly stated the standard of review for the granting of a summary judgment by a trial court:

In reviewing a summary judgment on appeal, this Court must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co., Inc.*, In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in the connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. If the movant submits summary judgment invalidating at least one element of the non-movant's case, then summary judgment should be granted. *Rayos v. Chrysler Credit Corp.*, (Tex.App.--E1 Paso 1985, no writ).

## State of the Evidences

The main point is that the Appellees filed a **copy** of the Deed of Trust and the Trustee's **Foreclosure** Deed. The Deed of Trust identifies *Michael L. Riddle* as the Trustee and *Long Beach Mortgage Company A. Corporation* as the beneficiary or mortgagee of the Deed of Trust. The Trustee's **Foreclosure** Deed names *Long Beach Mortgage Company A. Corporation and Michael L. Riddle.,* as the current holder of the mortgage and there is **no nominee assigned** to act as Substitute Trustee. There

is no summary judgment evidence indicating that ownership of the promissory note has passed from *Long Beach Mortgage Company A. Corporation and Michael L. Riddle,* to *Deutsche Bank National Trust Company as Trustee of Long Beach Mortgage Trust 2006-WL1.* The Trustee's **Foreclosure** Deed is an instrument of conveyance and is admissible as such. It is not an affidavit. It contains an acknowledgment, not verification. It is evidence of the transaction, but it is not evidence of the truth of the statement that *Deutsche Bank National Trust Company as Trustee of Long Beach Mortgage Trust 2006-WL1* was really the current holder of the promissory note or the beneficiary of the Hardaways' Deed. This entity is not registered on the Chain of Title with the name of the Appellee (Appendix # 1). One could infer such, but it is not evidence that it is true. Neither *Jeff Leva* nor *Sandy Desigenis* had been designated by *Long Beach Mortgage Company A. Corporation* and/or *Michael L. Riddle* and/or *by JPMorgan Chase National Bank,* (Appendix #3) to act as Substitute Trustee. This too was not proven by Appellees and is simply **an unverified assertion of authority**. **The Trial Court failed to follow the rules regarding summary judgment.** This Court has clearly stated that "every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor." Instead, the Trial Court gave the Appellee every possible inference.

## CONCLUSION

Because the Fort Bend County Court at Law No. 4 erred in its judgment of possession to the Appellee and ordered enforcement of a Writ of Possession when there was no legal standing or jurisdiction to do so, Appellants Monica Hardaway and Glenn Hardaway respectfully request to this Honorable Court to grant declaratory relief. Appellants request to reverse Appellee's affirmative judgment for summary judgment of possession. The County Court No. 4 had knowledge of the fraudulent deed conveyance as Appellants personally informed the judge twice that Appellees had no legal standing or interest in the Subject

Property and that there was no assignment on the Deed and no transfer of the promissory note with which to claim acceleration. There was no notification of default, and there was no legitimate lender or beneficiary to execute a "Power of Sale". Consequently, Appellants were never and are not tenants at sufferance. Therefore, the issuance of the writ of possession is unlawful. All actions described above make the non-judicial foreclosure void, the Promissory Note is now Null and the Deed of Trust unenforceable. All these cumulative actions from Appellee have caused Appellants irreparable harm, caused injury, and continue to cause injury to Appellants.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, The Hardaways respectfully request this Court to reverse the trial court's affirmative judgment for possession given to Appellees for Case No. 17-CCV-059731 at County Court at Law No. 4 in Fort Bend County, with prejudice and res judicata and render judgment to void the unlawful March 6, 2018 Writ of Possession. The Hardaways further request that this Court issue a Temporary Restraining Order preventing Appellees from seeking or obtaining or executing any Writ of Possession until the Fort Bend County District Court decides adjudication of Title, Cause No. 18-DCV-249402. The Hardaways also request such other and further relief to which they show themselves to be justly entitled.

Respectfully Submitted,

*/s/ Monica Hardaway and /s/ Glenn Hardaway*
Monica Hardaway and Glenn Hardaway
1303 Azalea Bend
Sugar Land, TX 77479

**21**

## CERTIFICATE OF SERVICE

As required by Texas Rules of Appellate Procedure 6.3 and 9.5(b), (d), (e), Monica Hardaway and Glenn Hardaway certify that we have served this document by mail and/or electronically on all parties which are listed below on March 16, 2018 as follows:

William Denzel Kee III
19855 Southwest Freeway, Ste 330
Sugar Land TX 77479

Jack O'Boyle & Associates
Christopher Ferguson
PO Box 815369
Dallas TX 75381

*/s/ Monica Hardaway and /s/ Glenn Hardaway*
Monica Hardaway and Glenn Hardaway
1303 Azalea Bend
Sugar Land, TX 77479
832-708-5321

## APPENDIX

1. Chain of Title for 1303 Azalea Bend, Sugar Land TX 77479

2. Hardaway's Deed of Trust

3. Assignment on Deed of Trust by JPMorgan Chase National Bank

4. Judgment of trial court Justice of the Peace Precinct 1 Place 2 in favor of Monica Hardaway and Glenn Hardaway awarding them possession of their property dated March 23, 2017

# APPENDIX # 1



# Fort Bend County Texas
## County Clerk Web Access

Welcome Visitor.         

| Welcome | Birth | Death | Marriage | Notices | Real Estate | FAQ |

Real Estate Document Access

Criteria: Street Name begins with 1303 AZALEA BEND District begins with SUGAR LAND
Showing Records 1 through 17 ( 17 records found as of 02/08/2018 03:10:07 PM get full count )

Click here for
Search Instructions

**Get a Free Copy**
Results List
Selected Detail(s)
Selected Image(s) (Watermarked)

**Other Options**
New Search
Refine Search

Sort By: [ ▼ ]

Drag a column here to group by.

| # | Image | ☐ | Instrument # Book-Page | Date Filed | Document Type | Name Associated Name | Legal Description | Status |
|---|-------|---|------------------------|------------|---------------|----------------------|------------------|--------|
| 1 | 📄 View | ☐ | 2002058848 4062-563 | 06/04/2002 | RELEASE | [R] WASHINGTON MUTUAL BANK FA [E] DAVIDSON JACK S (÷) | LOC 1303 AZALEA BEND DR SUGAR LAND (÷) | Perm |
| 2 | 📄 View | ☐ | 2002093933 4140-1656 | 08/30/2002 | DEED OF TRUST | [R] DAVIDSON JACK S (÷) [E] WASHINGTON MUTUAL BANK FA | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 3 | 📄 View | ☐ | 2003099016 4512-1384 | 07/22/2003 | DEED OF TRUST | [R] HURST DONNA (÷) [E] NEW CENTURY MORTGAGE CORPORATION | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 4 | 📄 View | ☐ | 2003146933 | 10/17/2003 | DEED OF TRUST | [R] HURST DONNA [E] NEW CENTURY MORTGAGE CORPORATION | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 5 | 📄 View | ☐ | 2004040801 | 04/07/2004 | RELEASE | [R] WASHINGTON MUTUAL BANK FA [E] DAVIDSON JACK (÷) | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 6 | 📄 View | ☐ | 2005026933 | 03/08/2005 | DEED OF TRUST | [R] MALDONADO EDUARDO E (÷) [E] LONG BEACH MORTGAGE COMPANY | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 7 | 📄 View | ☐ | 2005026945 | 03/08/2005 | MISCELLANEOUS | [R] MALDONADO EDUARDO E (÷) [E] LONG BEACH MORTGAGE COMPANY | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 8 | 📄 View | ☐ | 2005095786 0- | 08/08/2005 | DEED OF TRUST | [R] HARDAWAY MONICA R (÷) [E] LONG BEACH MORTGAGE COMPANY | LOC 1303 AZALEA BEND DRIVE SUGAR LAND (÷) | Perm |
| 9 | 📄 View | ☐ | 2005095787 0- | 08/08/2005 | MISCELLANEOUS | [R] HARDAWAY MONICA R (÷) [E] LONG BEACH MORTGAGE COMPANY | LOC 1303 AZALEA BEND DRIVE SUGAR LAND (÷) | Perm |
| 10 | 📄 View | ☐ | 2005095788 0- | 08/08/2005 | NOTICE | [R] MALDONADO EDUARDO E (÷) [E] PUBLIC | LOC 1303 AZALEA BEND DRIVE SUGAR LAND (÷) | Perm |
| 11 | 📄 View | ☐ | 2007048619 0- | 04/23/2007 | LIEN | [R] GREATWOOD COMMUNITY ASSOCIATION INC [E] HARDAWAY MONICA R | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 12 | 📄 View | ☐ | 2009038166 0- | 04/22/2009 | LIEN | [R] GREATWOOD COMMUNITY ASSOCIATION INC [E] HARDAWAY MONICA R | LOC 1303 AZALEA BEND SUGAR LAND (÷) | Perm |
| 13 | 📄 View | ☐ | 2010023726 | 03/22/2010 | ASSIGNMENT | [R] LONG BEACH MORTGAGE COMPANY (÷) [E] GOLDMAN SACHS MORTGAGE COMPANY | LOC 1303 AZALEA BEND DRIVE SUGAR LAND (÷) | Perm |
| 14 | 📄 View | ☐ | 2014035819 | 04/11/2014 | RELEASE | [R] GREATWOOD COMMUNITY ASSOCIATION INC [E] HARDAWAY MONICA R | LOC 1303 AZALEA BEND SUGAR LAND | Perm |
| 15 | 📄 View | ☐ | 2015038944 | 04/15/2015 | RELEASE | [R] OCWEN LOAN SERVICING LLC ATTNY IN FACT (÷) [E] HARDAWAY MONICA R (÷) | LT 1 BLK 1 SEC 3 GREMWOOD FOREST LOC 1303 AZALEA BEND SUGAR LAND SLIDE 1308B | Perm |
| 16 | 📄 View | ☐ | 2016071497 | 07/05/2016 | LIEN | [R] GREATWOOD COMMUNITY ASSOCIATION INC [E] HARDAWAY MONICA R | LT 1 BLK 1 SEC 3 GREATWOOD FOREST LOC 1303 AZALEA BEND SUGAR LAND SLIDE 1308B | Perm |

# APPENDIX # 2

Loan No: 6525995
Borrower: MONICA R. HARDAWAY



DTRUST    2005095786

9 PGS

Data ID: 381

Return to:    LONG BEACH MORTGAGE COMPANY
P.O. BOX 201085
STOCKTON, CA 95202

―――――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――――

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on the 4th day of August, 2005.
The grantor is MONICA R. HARDAWAY AND HUSBAND, ~~GLEN~~ HARDAWAY
*GLENN G.*

                                                                 ("Borrower").
The trustee is MICHAEL L. RIDDLE, whose address is 717 NORTH HARWOOD, SUITE 2400, DALLAS, TEXAS 75201

                                                                      ("Trustee").
The beneficiary is LONG BEACH MORTGAGE COMPANY , A CORPORATION,
which is organized and existing under the laws of the State of DELAWARE,
and whose address is 1400 SOUTH DOUGLASS ROAD, SUITE 100, ANAHEIM, CA 92806

                                                                        ("Lender").

Borrower owes Lender the principal sum of THREE HUNDRED THOUSAND and NO/100-----Dollars (U.S. $ 300,000.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2045. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in FORT BEND County, Texas:

LOT ONE (1), IN BLOCK ONE (1), OF THE FINAL PLAT OF GREATWOOD FOREST, SECTION THREE (3), AN ADDITION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 1308/B AND 1309/A, OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

which has the address of 1303 AZALEA BEND DRIVE,                             SUGAR LAND,
                                         [Street]                                             [City]
TEXAS          77479                                          ("Property Address");
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

TEXAS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Modified by Middleberg, Riddle & Gianna                    Form 3044    03/98          (Page 1 of 5 Pages)

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

Form 3044    03/98          (Page 2 of 5 Pages)

**STATE OF TEXAS**
**COUNTY OF FORT BEND**

I, Laura Richard, County Clerk of Fort Bend County, Texas, do hereby certify that the foregoing is a true and correct copy as the same appears on file and recorded in the appropriate records. Note: A portion of a personal identifying number may have been redacted as allowed by law.



Laura Richard, County Clerk
Fort Bend County, Texas
June 12, 2017

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any

notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**25. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**26. Waiver of Notice of Intention to Accelerate.** Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] 1-4 Family Rider
[ ] Graduated Payment Rider    [X] Planned Unit Development Rider    [ ] Biweekly Payment Rider
[ ] Balloon Rider    [ ] Rate Improvement Rider    [ ] Second Home Rider
[ ] Other(s) [specify]

**28. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate] The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed conveying Property to Borrower dated or effective the same date as this Security Instrument, which Vendor's Lien has been assigned to Lender, this Security Instrument being additional security therefor.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

......................................................(Seal)
GLEN HARDAWAY —Borrower
GLENN

......................................................(Seal)
MONICA R. HARDAWAY —Borrower

[Space Below This Line For Acknowledgment]

State of TEXAS
County of Harris

This instrument was acknowledged before me on the 4rd day of August, 20 05 by
MONICA R. HARDAWAY AND GLEN HARDAWAY

_____
Notary Public

Carlos Fernandez
(Printed Name)

My commission expires: 6-11-08

CARLOS ALBERTO FERNANDEZ
Notary Public, State of Texas
My Commission Expires
June 11, 2008

AS PER ORIGINAL

# APPENDIX # 3

2014133401
ELECTRONICALLY RECORDED
Official Public Records
12/9/2014 9:03 AM



Dianne Wilson, County Clerk
Fort Bend County Texas
Pages:     1          Fee: $ 9.50

## CORPORATE ASSIGNMENT OF DEED OF TRUST

THIS DOCUMENT IS BEING RECORDED TO REMEDY A GAP IN THE RECORDED OWNERSHIP INTEREST SHOWN FOR THE MORTGAGE DATED 8/4/05 RECORDED 8/8/05 INS NO 2005095786

Loan #: 0696058197



FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, THE FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION ORGANIZED AND EXISTING UNDER AN ACT OF CONGRESS (FDIC), WHOSE ADDRESS IS 1601 BRYAN STREET, DALLAS, TX 75201, AND ACTING IN ITS RECEIVERSHIP CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY, (ASSIGNOR) by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interests secured thereby, all liens, and any rights due or to become due thereon, to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust dated 08/04/2005 executed by MONICA R. HARDAWAY AND GLENN HARDAWAY in the amount of $300,000.00 and recorded on 08/08/2005 as Instrument # 2005095786, in Book n/a, Page n/a in the records of Real Property of FORT BEND County, Texas.

LOT ONE (1), IN BLOCK ONE (1), OF THE FINAL PLAT OF GREATWOOD FOREST, SECTION THREE (3), AN ADDITION IN FORT BEND COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN SLIDE NO. 1308/B AND 1309/A, OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on 12 / 03 / 2014 (MM/DD/YYYY).
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY

By: _____
Omeka Newman
Vice President

STATE OF LOUISIANA   PARISH OF OUACHITA
On 12 / 03 / 2014 (MM/DD/YYYY), before me appeared Omeka Newman ., to me personally known, who did say that he/she/they is/are the Vice President of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK SUCCESSOR IN INTEREST TO LONG BEACH MORTGAGE COMPANY and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____
Eva Reese
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

EVA REESE
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID# 17070

Document Prepared By: Omeka Newman , JPMorgan Chase Bank, N.A., 780 Kansas Lane, Suite A, Monroe, LA, 71203
When Recorded Return To: JPMorgan Chase Bank, NA, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683
JPCAS 25000054 -- WAMU   T2814112309   [C-1]  FRMTX1_JPCAS3



*D0008526293*



# APPENDIX # 4

# JUDGMENT FOR DEFENDANT

17-JEV12-12046

Deutsche Bank National Trust Company As Trustee In Trust For Registered Holders Of Long Beach Mortgage Loan Trust 2006-w11 Asset Backed Certificates Series 2006 W11, PLAINTIFF(S)

VS.

Monica Hardaway; Glenn Hardaway, DEFENDANT(S)

IN JUSTICE COURT, PRECINCT ONE, PLACE TWO
FORT BEND COUNTY, STATE OF TEXAS
MARY S. WARD, JUSTICE OF THE PEACE, PRESIDING

ON March 23, 2017, CAME TO BE HEARD THE ABOVE NUMBERED AND ENTITLED CAUSE WHERE IN Deutsche Bank National Trust Company As Trustee In Trust For Registered Holders Of Long Beach Mortgage Loan Trust 2006-w11 Asset Backed Certificates Series 2006 W11 IS PLAINTIFF, AND Monica Hardaway; Glenn Hardaway IS DEFENDANT. BOTH PARTIES ANNOUNCED READY FOR TRIAL.

BASED ON TESTIMONY GIVEN BY BOTH PARTIES JUDGEMENT IS IN FAVOR OF THE DEFENDANT.

DEFENDANT SHALL RETAIN POSSESSION OF 1303 Azalea Bend Sugar Land, TX 77479.

SIGNED AND ENTERED THIS 23rd day of March, 2017.

Mary S. Ward, Judge
_____
MARY S. WARD
JUSTICE OF THE PEACE
PRECINCT 1, PLACE 2
FORT BEND COUNTY, TEXAS

Bond: $500.00